**Denise NWANNUNU a/k/a Denise Williams, Appellant–Defendant,**

v.

**WEICHMAN & ASSOCIATES, P.C., Appellee–Plaintiff.**

No. 45A03–0109–CV–308.

Court of Appeals of Indiana.

June 26, 2002.

Rehearing Denied July 31, 2002.

R. Brock Jordan, Rubin & Levin, P.C., Indianapolis, Indiana, Attorney for Appellant.

J. Douglas Angel, J. Douglas Angel & Associates, Munster, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Denise Nwannunu a/k/a Denise Williams ("Ms. Williams"), appeals the trial court's denial of her Trial Rule 60 Motion for Relief from Judgment.

We reverse.

Dr. Nwannunu and Ms. Williams were married in the summer of 1987 and lived together in Indiana until the summer of 1997, when Ms. Williams moved to New

Jersey.[1] During that time, Dr. Nwannunu purported to operate his medical practice through a corporation known as Lakefront Medical and Ambulatory Care Center, P.C. ("Lakefront").[2]

From July 1993 through January 1997, Weichman & Associates, P.C. ("Weichman") performed accounting and other financial services for Lakefront, including payroll, compiling and reconstructing transactions, and preparation of corporate income tax returns. Invoices were submitted to Lakefront for such services. Weichman also performed accounting services for Dr. Nwannunu and Ms. Williams personally by preparing their personal income tax returns. Invoices were submitted to Dr. Nwannunu and Ms. Williams personally for such services.

On July 29, 1997, Weichman filed its complaint against Dr. Nwannunu, Lakefront, and Ms. Williams (collectively "the defendants" where appropriate) for indebtedness incurred as a result of the accounting and financial services Weichman provided to the defendants. Counts I and II of the complaint sought judgment on account against Dr. Nwannunu and Lakefront in the principal amount of $59,270.00. Counts III and IV sought judgment on account against Dr. Nwannunu and Ms. Williams personally in the principal amount of $5,425.00. On July 31, 1997, the complaint and summons for Ms. Williams

were left at the Dyer, Indiana residence which she had shared with Dr. Nwannunu. However, Ms. Williams had already relocated to New Jersey.[3]

On August 13, 1997, William Walden ("Attorney Walden"), at the request of Dr. Nwannunu, entered his appearance on behalf of all defendants, and thereafter filed an answer and counter-claim on their behalf. Weichman filed a reply to the counter-claim and initiated discovery in October 1997. During the course of the litigation, several discovery disputes arose concerning the defendants' failure to comply with discovery requests, including answering interrogatories, producing documents, and attending depositions. Weichman filed several motions to compel, which the trial court granted. The defendants, however, did not comply with the trial court's orders, resulting in sanctions being imposed against them.

On November 3, 1999, Weichman filed a Motion for Sanctions, Costs and Attorney Fees, wherein Weichman requested that judgment be entered against the defendants as a discovery sanction. Prior to the hearing on Weichman's motion for sanctions, Attorney Walden filed a motion to withdraw his appearance, asserting that there had been an irretrievable breakdown between him and the defendants.[4] Weichman filed an objection to Attorney Walden's withdrawal. On March 10, 2000, the

---

1. Dr. Nwannunu initially intended to relocate to New Jersey after he tied up business and personal affairs in Indiana. Ms. Williams asserted that instead of moving to New Jersey, she believed that in October of 1998, Dr. Nwannunu moved to Nigeria to pursue political interests. In April 2001, Ms. Williams obtained a divorce from Dr. Nwannunu on the basis of abandonment.

2. During discovery, it was determined that Dr. Nwannunu's corporation, i.e. Lakefront, was administratively dissolved on December 31, 1987 for failing to file annual reports.

3. Ms. Williams testified that she was not living in Indiana when Weichman filed its complaint in July 1997. Ms. Williams explained that she had a temporary address in New Jersey prior to moving to her current address in August 1997.

4. Apparently, the trial court conditioned Attorney Walden's withdrawal upon his providing the court with Ms. Williams' address in New Jersey. Attorney Walden complied with the court's request.

trial court entered an order granting Attorney Walden's motion to withdraw his appearance. The trial court's order further stated:

"As sanctions for the Defendants' failure to comply with discovery and ADR Rules, the Court now orders Defendants, and each of them, defaulted as of May 11, 2000, unless they appear prior to that date, in open Court, and comply with the Court's prior Orders.

If [Defendants] fail to appear by May 11, 2000, the Court will enter Judgment against them in the amount of Sixty–Four Thousand Six Hundred Ninety–Five ($64,695.00) Dollars, plus pre-judgment interest, costs, and attorneys fees." Appellant's Appendix at 51–52.

Weichman's attorney sent a letter to Ms. Williams at her residence in New Jersey, enclosing a copy of the trial court's order. Ms. Williams, however, did not appear in open court by the May 11 deadline. Nevertheless, the record does not indicate that a default judgment was entered. On May 19, 2000, James Clement ("Attorney Clement") entered his appearance on Ms. Williams' behalf.

On May 24, 2000, Weichman filed a Motion to Enter Judgment requesting that judgment be entered against the defendants as a result of their failure to comply with the trial court's March 10 order. The trial court conducted a hearing on Weichman's motion on August 28, 2000. Ms. Williams was not present at this hearing, but was represented by Attorney Clement. Following the hearing, the trial court entered an order stating:

"That in light of the history of flagrant disregard for the Indiana Rules of Trial Procedure regarding discovery and the Orders of this Court by the Defendants, and each of them, it is clear that no sanction other than entering judgment in favor of the Plaintiff is appropriate." Appellant's App. at 56.

The trial court then entered judgment against the defendants, jointly and severally, in the amount of $99,956.75.[5]

On September 19, 2000, the trial court granted Attorney Clement's motion to withdraw as counsel for Ms. Williams. On February 27, 2001, Attorney Walden re-entered his appearance on behalf of Ms. Williams and contemporaneously filed a motion for relief from judgment and memorandum in support thereof. A hearing on Ms. Williams' motion was held on August 23, 2001.

Ms. Williams attended the hearing on her motion for relief from judgment and informed the trial court that she was not aware that she had been named as a defendant in the lawsuit until she received the letter and a copy of the court's order from Weichman's attorney sometime in March 2000, nearly three years after the lawsuit had been filed. Ms. Williams further testified that she had not consented to Attorney Walden's representation of her interests, as she did not even know that she was a party to the action. Ms. Williams explained to the trial court that she had never spoken or corresponded with Attorney Walden. She further asserted that she never knew about scheduled depositions, requests for production of documents, or the need to answer interrogatories, or of the various court orders compelling compliance with such discovery. Ms. Williams maintained that she had not consciously ignored the court's previous

---

5. The judgment is broken down as follows: principal sum of $64,695.00 ($59,270.00 prayed for in Counts I and II, plus $5,425.00 prayed for in Counts III and IV), plus pre-judgment interest in the sum of $27,413.83, plus reasonable attorney fees, costs, and expenses in the sum of $7,847.92.

orders and asserted that she was willing to cooperate fully by appearing for depositions and responding to interrogatories. Ms. Williams further acknowledged personal liability relating to the preparation of her personal income tax returns and offered to pay the indebtedness incurred thereby. Notwithstanding Ms. Williams' testimony, the trial court denied her motion for relief from judgment.

Upon appeal, Ms. Williams contends that the trial court abused its discretion in denying her Indiana Trial Rule 60(B) motion for relief from judgment. Specifically, Ms. Williams asserts that a breakdown in communication occurred, thereby constituting excusable neglect in not complying with various discovery requests and court orders. Further, Ms. Williams alleges that she has a meritorious defense to Weichman's cause of action.

### Standard of Review

■ Upon appeal, a trial court's decision regarding whether to set aside a default judgment is given substantial deference. *Kmart Corp. v. Englebright*, 719 N.E.2d 1249, 1253 (Ind.Ct.App.1999), *trans. denied.* Our standard of review is limited to determining whether the trial court abused its discretion. *Id.* We will find an abuse of discretion if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the trial court's determination, we will not reweigh the evidence or substitute our judgment for that of the trial court. *Id.* Any doubt as to the propriety of a default judgment is resolved in favor of the defaulted party. *Pitts v. Johnson County Dept. of Public Welfare*, 491 N.E.2d 1013, 1015 (Ind.Ct.App.1986).

■ Generally, default judgments are not favored in Indiana, for it has long been the preferred policy of this State that courts decide a controversy on its merits.

*Pitts*, 491 N.E.2d at 1015. However, when the discovery process breaks down, Indiana Trial Rule 37 provides the court with tools to enforce compliance. *Hatfield v. Edward J. DeBartolo Corp.*, 676 N.E.2d 395, 399 (Ind.Ct.App.1997), *trans. denied.* The court may impose various sanctions, including an award of costs and attorney's fees, exclusion of evidence, dismissing the action, or rendering a judgment by default. T.R. 37(B)(2). The appropriate sanction for failure to comply with a trial court's order is a matter committed to the sound discretion of the trial court. *Hatfield*, 676 N.E.2d at 399. The trial court is not required to impose lesser sanctions before applying the ultimate sanction of dismissal or default judgment. *Id.*

### I

### Excusable Neglect

■ A party seeking to set aside a default judgment under T.R. 60(B)(1) must demonstrate that the judgment was entered as a result of mistake, surprise, or excusable neglect. The trial court's discretion in this area is necessarily broad because any determination of mistake, surprise, or excusable neglect must turn upon the particular facts and circumstances of each case. *Kmart*, 719 N.E.2d at 1253. Because the circumstances of each case will be different, there are no fixed rules or standards for determining what constitutes mistake, surprise, or excusable neglect. *Id.* In making its determination, the trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. *Id.*

A well-established ground for relief from a default judgment is a "breakdown in communication" sufficient to establish mistake, surprise, or excusable neglect under T.R. 60(B)(1). *Whittaker v. Dail*, 584

N.E.2d 1084, 1087 (Ind.1992) (finding an abuse of discretion in not setting aside a default judgment where a breakdown in communication between insurer and insured, which resulted in insured's failure to appear at trial, constituted excusable neglect, and where there was no evidence of "foot dragging" by defendant). Nevertheless, not all breakdowns in communication rise to the level of excusable neglect. *See Smith v. Johnston*, 711 N.E.2d 1259, 1262 (Ind.1999) (holding breakdown in communication which resulted from defendant's failure to open his mail was neglect, but not excusable neglect).

Here, the trial court entered a default judgment against Ms. Williams "in light of the history of flagrant disregard for the Indiana Rules of Trial Procedure regarding discovery and the Orders of this Court." Appellant's App. at 56. However, the undisputed evidence shows that at the time the complaint and summons were served by being left at the home she had shared with Dr. Nwannunu, Ms. Williams no longer lived at that location, as she had already relocated to New Jersey. In a certification attached to her motion for relief from judgment, Ms. Williams indicated that she was aware of Weichman's lawsuit against Dr. Nwannunu and Lakefront, but that she did not know that she had been named as a defendant in the cause of action. At the hearing on her motion for relief from judgment, Ms. Williams testified that she never saw a copy of the complaint. Ms. Williams further testified that she was not aware of, nor had she received from Dr. Nwannunu or Attorney Walden, any discovery requests or court orders compelling her compliance with various discovery requests, including appearance for scheduled depositions. Ms. Williams stated that she never willfully disobeyed any of the trial court's orders.

In addition, it is undisputed that Attorney Walden entered his appearance on behalf of Ms. Williams at the request of Dr. Nwannunu, and that Ms. Williams never consented to such representation. Ms. Williams testified that she had not hired Attorney Walden to represent her, as she did not even know that she was a party to the action. Further, there is nothing in the record which indicates that Ms. Williams ever received notice that Attorney Walden had entered an appearance on her behalf. In the three years that the lawsuit was pending before the trial court, Attorney Walden defended the action on behalf of all defendants, despite the fact that he had never spoken or corresponded with Ms. Williams. Attorney Walden stated that he mailed documents relating to the litigation directly to Dr. Nwannunu. Attorney Walden admitted that he had assumed, albeit wrongly, that Dr. Nwannunu was sharing the information regarding the lawsuit with Ms. Williams. Finally, it is undisputed that Dr. Nwannunu never joined Ms. Williams in New Jersey, and that sometime in 1998, Dr. Nwannunu abandoned Ms. Williams and moved to Nigeria.

From this evidence, we conclude that Ms. Williams' alleged neglect in failing to respond to discovery requests and comply with court orders was excusable. Here, there was more than a "breakdown in communication"—there was no communication at all. It is quite apparent that Dr. Nwannunu never shared any information concerning the lawsuit with Ms. Williams. Moreover, Attorney Walden never made any effort to correspond with Ms. Williams regarding the litigation, a party he purported to represent. From the facts before the trial court, there is nothing which indicates to us that Ms. Williams was even aware that she had been named as a defendant in this cause or that she was apprised of the status of the litigation prior

to receiving the letter and a copy of the court's order nearly three years after the lawsuit commenced. We cannot see how the failure to comply with the discovery requests and court orders can be attributed to a party who was not even aware of them. Further, there is no evidence that there was "foot dragging" on Ms. Williams' part as to the events which led to the entry of default judgment.

■ Weichman attempts to avoid this conclusion by asserting that Dr. Nwannunu, as Ms. Williams' husband, acted as her agent, and thus, his knowledge of the lawsuit could be imputed to her. Weichman's assertion, however, is a legal conclusion which is unsupported by the facts.

■■ It has long been recognized that husbands may, under certain circumstances, act as the agent for their wives. *Runyon v. Snell*, 116 Ind. 164, 18 N.E. 522 (1888). However, the relationship of husband and wife does not itself create agency. *Idlewine v. Madison County Bank and Trust Co.*, 439 N.E.2d 1198, 1202 (Ind. Ct.App.1982); *Uland v. Nat'l City Bank of Evansville*, 447 N.E.2d 1124, 1128 (Ind.Ct. App.1983). Nonetheless, marriage is a factor to be considered to determine if an agency relationship exists. *Idlewine*, 439 N.E.2d at 1202. To establish the agency relationship, the evidence "must be 'clear and satisfactory and sufficiently strong to explain and remove the equivocal character' of the marital relationship." *Id.* (quoting *Bayes v. Isenberg*, 429 N.E.2d 654, 659 (Ind.Ct.App.1981)). Implied authority for a husband to act as the agent for his wife must be discerned from acts and conduct, and not merely from the marriage relationship. *Moehlenkamp v. Shatz*, 396 N.E.2d 433, 436 (Ind.Ct.App.1979).

While Weichman's argument seems plausible, there is no evidence in the record to support the contention. Weichman's assertion that Dr. Nwannunu acted

as Ms. Williams' agent seems to be based only upon the fact that they were married, which, by itself, is not sufficient. Weichman does not direct us to, and our review of the record does not reveal, any evidence to support a finding that Ms. Williams authorized, expressly or impliedly, Dr. Nwannunu to act as her agent with regard to the lawsuit in question. Indeed, from the undisputed facts before the trial court, it appears that Dr. Nwannunu concealed the litigation from Ms. Williams by failing to inform her that she had been named as a defendant to the lawsuit and by failing to communicate with her about the status of the litigation. Ms. Williams discovered that she was a party to the lawsuit only after Weichman's attorney mailed her a copy of the trial court's order directing her to appear or risk being defaulted, nearly three years after the complaint was filed. Thus, we cannot say that Dr. Nwannunu's knowledge about the lawsuit and his subsequent failure to comply with discovery requests and court orders should be imputed to Ms. Williams.

■ Weichman further asserts that because Attorney Walden entered his appearance on Ms. Williams' behalf, he too was acting as her agent, and thus his knowledge could be imputed to her. We begin by noting that where an attorney appears there is a rebuttable presumption that he has authority to enter an appearance for a party until his authority is challenged and evidence introduced to the contrary. *State ex rel. Durham v. Marion Circuit Court*, 240 Ind. 132, 137, 162 N.E.2d 505, 507 (1959).

Here, Ms. Williams testified that she never consented to Attorney Walden's initial representation of her in this lawsuit. *See Douglas v. Monroe*, 743 N.E.2d 1181, 1184 (Ind.Ct.App.2001) (recognizing that the attorney client relationship is only created when the attorney and the client both consent to its formation). Further, Attor-

ney Walden explained· to the trial court that he entered his appearance for Ms. Williams only at the request of Dr. Nwannunu. Attorney Walden defended· the action on behalf of Ms. Williams even though he had never spoken with her. Attorney Walden communicated directly with Dr. Nwannunu and made no attempt to contact or correspond with Ms. Williams in any way. From these facts, it is clear that Ms. Williams has rebutted the presumption that Attorney Walden had authority to enter his appearance on her behalf and represent her in the action. Thus, we cannot say that Attorney Walden acted as Ms. Williams' agent or ·that his conduct and knowledge about the lawsuit can be imputed to her.

Given the undisputed facts before the trial court, it is clear that Ms. Williams did not contumaciously disregard Weichman's discovery requests or the subsequent court orders compelling her compliance. Weichman's bare legal assertions do not permit us to impute the knowledge and conduct of Dr. Nwannunu or Attorney Walden to Ms. Williams. There was clearly a lack of communication which gave rise to the events which led to the entry of default judgment as a discovery sanction against Ms. Williams.[6]

## II

### Meritorious Defense

■■■■ To prevail on a motion to set aside a default judgment upon grounds of mistake, surprise, or excusable neglect, a party is also required to demonstrate that she has a good and meritorious defense to the action. T.R. 60(B); *Kmart,* 719 N.E.2d at 1258. ·A meritorious defense is one showing that, if the case was tried on the merits, a different result would be reached. *Id.* The movant need not prove the meritorious defense, but only show enough admissible evidence to make a prima facie showing of a meritorious defense indicating to the trial court the judgment would change and the defaulted party would suffer an injustice if the judgment was allowed to stand. *Id.*

Upon appeal, Ms. Williams maintains that she has a meritorious defense. Specifically, Ms. Williams asserts that she cannot be liable for the corporate debt incurred by Lakefront and Dr. Nwannunu. Ms. Williams testified that she was not an officer, director, or incorporator of Lakefront, nor was she in any way involved or affiliated with Lakefront. Ms. Williams further asserted that she is not a medical doctor. We conclude that Ms. Williams has presented sufficient evidence to make a prima facie showing of a meritorious defense.

Because we have concluded that Ms. Williams has established excusable neglect and that she has made a prima facie showing of a meritorious defense, we hold that the trial court abused its discretion in denying Ms. Williams' motion to set aside default judgment.

The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

KIRSCH, J., and ROBB, J., concur.

---

**6.** We recognize that in March 2000, after receiving a copy of the trial court's order warning of default if she did not comply, Ms. Williams had actual knowledge of the lawsuit and yet she still failed to appear by May 11. However, we note that the risk of being defaulted arose out of the failure of the parties to comply with discovery and court orders. As we have concluded that such failure should not be attributed to Ms. Williams, it can hardly be said that default judgment as a discovery sanction was appropriate.