**Darryl Eugene WALKER, Appellant–Respondent,**

v.

**Paula Ann KELLEY, Appellee–Petitioner.**

No. 72A04–0406–JV–335.

Court of Appeals of Indiana.

Dec. 23, 2004.

834

Joseph Leon Payne, Austin, IN, Attorney for Appellant.

Michael Allen, Allen & Troemel, Indianapolis, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Darryl Eugene Walker ("Father") appeals the trial court's grant of Paula Ann Kelley's ("Mother's") Motion to Correct Error under Indiana Trial Rule 59 and presents the following issues for our review:

1. Whether the trial court abused its discretion when it granted Mother's motion to correct error.

2. Whether the trial court committed reversible error when it did not make specific findings and conclusions pursuant to Indiana Trial Rule 52.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Mother and Father lived together out of wedlock for much of their fifteen-year relationship and have two sons, S.M., age ten, and D.E., age seven. On January 3, 2002, the parties filed an Agreed Judgment Entry which established the paternity of both boys but did not address the issues of custody, support, or visitation. However, by the end of that year, Mother and Father had separated, and Father sought custody of S.M. and D.E. Pursuant to its December 24, 2002 order, the trial court granted Father temporary custody of the children and scheduled the final hearing for February 21, 2003. Following that hearing, on February 24, 2003, the trial court granted Mother custody of S.M. and D.E.

Thereafter, Mother moved in with Father for a brief period. During that time, Father engaged in conduct which resulted in the filing of criminal charges for intimidation, sexual battery, criminal confinement, and domestic battery and which ultimately led to Mother and Father's final separation.

On October 28, 2003, Father filed a Petition to Modify Custody and Support, and the trial court scheduled a hearing to be held on December 4, 2003, at 9:00 a.m. On October 31, 2003, Mother was served with the order containing the hearing date, but she failed to appear in court on the designated day. Nevertheless, the trial court proceeded to conduct an abbreviated hearing and issued an order awarding Father custody of both children and directing Mother to pay child support.

Once Mother learned of the order, she retained counsel, and on December 12, 2003, Mother sought relief from judgment under Trial Rule 60(B) by filing a Petition to Set Aside Default Judgment.[1] In that petition, she asserted that she missed the hearing on December 4, 2003 because she had misread the order and mistakenly believed that it had been set for December 9, 2003.[2] Mother brought five witnesses to the February 2, 2004 hearing on that motion, including Gerald Morrow, her work supervisor, from whom she had sought permission to take a vacation day to attend the December custody hearing, and Scott County Sheriff John Lizenby, whom she

---

1. As we have discussed, an abbreviated hearing was conducted on December 4, 2003, in Mother's absence. But Father does not challenge Mother's characterization of the court's action as a default judgment, and, thus, without ruling on the nature of the court's December 4, 2003 order, we treat it as a default judgment for the purposes of this appeal.

2. Mother did not have legal representation when she received notice of the hearing date, and she did not obtain a lawyer until after the trial court had entered a judgment against her.

had requested to escort her to the custody hearing to protect her from Father. Mother claims that she had contacted both men with those requests several weeks in advance of the actual hearing date and that she had made those arrangements in anticipation of a hearing being held on December 9, 2003. In addition, witnesses from Child Protective Services were prepared to testify on her behalf regarding custody of S.M. and D.E. However, the trial court did not permit any of those five witnesses to testify, and, after both parties presented their arguments, the court orally denied her motion to set aside the December 4, 2003 judgment.

On March 3, 2004, Mother filed a Motion to Correct Error, a Verified Statement of Facts and Grounds supporting that motion, and her affidavit. On May 10, 2004, before the court conducted the hearing on her motion to correct error, Mother filed a second affidavit and a Motion for Findings of Fact and Conclusions of Law pursuant to Trial Rule 52. Following the arguments of counsel, the trial court granted Mother's motion to correct error and vacated the December 4, 2003 order awarding custody of the children to Father. The court further ordered that S.M. and D.E. remain in Father's custody pending a new hearing on the issue. This appeal ensued.

## DISCUSSION AND DECISION

### Motion to Correct Error

■ Father maintains that the trial court abused its discretion when it granted Mother's motion to correct error because (1) her mistaken belief that the hearing was to occur on December 9, 2003, did not constitute excusable neglect, and (2) Mother did not make a prima facie showing of a meritorious defense. Initially, we note that Father assumes that Trial Rule 60(B) provides the proper framework for analyzing the issues on appeal. But the trial court denied Mother's Trial Rule 60(B) motion to set aside default judgment and subsequently granted Mother's motion to correct error. The final order the trial court entered was its ruling on the motion to correct error, and, therefore, Indiana Trial Rule 59 governs Father's appeal.

■ The standard of appellate review of trial court rulings on motions to correct error is abuse of discretion. *Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048, 1055 (Ind.2003). An abuse of discretion occurs if the trial court's decision was against the logic and effect of the facts and circumstances before the court or if the court misapplied the law. *In re Supervised Estate of Williamson v. Williamson,* 798 N.E.2d 238, 241 (Ind.Ct.App. 2003). However, by granting Mother's motion to correct error, the trial court, in effect, set aside the default judgment. Thus, the context and circumstances under which the default judgment was entered are relevant to our review.

■ On appeal, a trial court's decision regarding whether to set aside a default judgment is given substantial deference. *Nwannunu v. Weichman & Associates, P.C.,* 770 N.E.2d 871, 876 (Ind.Ct.App. 2002). Our standard of review is limited to determining whether the trial court abused its discretion. *Id.* In reviewing the trial court's determination, we will not reweigh the evidence or substitute our judgment for that of the trial court. *Id.* A party seeking to set aside a default judgment under Trial Rule 60(B)(1) must demonstrate that the judgment was entered as a result of mistake, surprise, or excusable neglect. *Id.* The trial court's discretion in this area is necessarily broad because any determination of mistake, surprise, or excusable neglect must turn upon the particular facts and circumstances of each case. *Id.* In addition to showing

sufficient grounds for relief, the moving party must also make a prima facie showing of a meritorious defense in order to prevail on a motion to set aside a default judgment under Trial Rule 60(B). *See* Ind. Trial Rule 60(B); *Baxter v. State*, 734 N.E.2d 642, 646 (Ind.Ct.App.2000). A meritorious defense is one demonstrating that, if the case were retried on the merits, a different result probably would be reached. *See Baxter*, 734 N.E.2d at 646.

■ Generally, default judgments are not favored in Indiana, for it has long been the preferred policy of this State that courts decide a controversy on its merits. *Nwannunu*, 770 N.E.2d at 876. A cautious approach to the grant of motions for default judgment is warranted in "cases involving material issues of fact, substantial amounts of money, or weighty policy determinations." *Mason v. Ault*, 749 N.E.2d 1288, 1290 (Ind.Ct.App.2001) (quoting *Green*, 344 N.E.2d at 110). In making its decision, the trial court is required to balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in the finality of litigation. *Crafton v. Gibson*, 752 N.E.2d 78, 82–83 (Ind.Ct.App.2001). Any doubt as to the propriety of a default judgment is resolved in favor of the defaulted party. *Nwannunu*, 770 N.E.2d at 876.

Here, there is evidence to show that Mother was not acting with the intent to delay the custody hearing that was scheduled for December 4, 2003. Several weeks prior to the hearing, Mother made arrangements to attend it. But, unfortunately, she based her plans on the wrong date.[3] In his affidavit, Sheriff Lizenby attests that Mother had contacted him to request that he escort her to court on December 9. And once Mother learned of her mistake, she promptly sought to remedy the situation. Mother hired an attorney and filed a motion for relief under Trial Rule 60(B) within three days of the default judgment being entered against her. Moreover, we see nothing in the record to suggest that Mother was dilatory in any of the prior court proceedings involving S.M. and D.E.

Most importantly, granting Mother's motion to correct error comports with the trial court's duty to determine whether a modification of existing support and custody arrangements is in the best interests of the children. *See* Ind.Code § 31–14–13–6. In making that determination, "[t]he court *shall* consider *all relevant factors*, including . . . (6) The mental and physical health of all individuals involved [and] (7) Evidence of a pattern of domestic violence by either parent." Ind.Code § 31–14–13–2 (emphases added). In this case, we do not see how the best interests of the children could be ascertained without a hearing that affords both parents the opportunity to present evidence and cross-examine witnesses, particularly where, as here, both parents have actively participated in the ongoing custody dispute from the beginning and when allegations of domestic violence and physical and mental infirmity are involved.

■ Setting aside the default judgment requires Father to do nothing more than he was prepared to do on December 4, 2003, that is, participate in a full hearing at which each parent would have the opportunity to show how the children's best interests would be served by making him or her

---

3. Contrary to Mother's assertion, we do not believe the formatting of the court order setting forth the date of the hearing is in any way misleading or confusing, even to the lay reader. That order specifically stated that the hearing was "set for the 4 day of Dec., 2003 at 9 o'clock a.m." Appellant's App. at 111.

the custodial parent. On the other hand, if the default judgment were allowed to stand, Mother's oversight would result in the loss of her children, an injustice which far outweighs the inconvenience that Father would suffer and society's interest in the finality of litigation. While the judicial system normally "cannot allow its processes to be stymied by simple inattention," the principle of judicial economy must yield to considerations of justice. *Smith v. Johnston,* 711 N.E.2d 1259, 1262 (Ind. 1999). Granting Mother's motion to correct error reflects the court's determination that a refusal to set aside the default judgment would produce an unjust result and complies with our statutory requirement that the best interests of the children dictate the establishment or modification of custody arrangements.

■■■ Father also argues that the trial court abused its discretion when it granted Mother's motion to correct error because Mother did not present a meritorious defense. We do not agree. On December 4, 2003, the court conducted an abbreviated hearing in Mother's absence. During that hearing, Father testified, *inter alia,* that (1) Mother failed to take custody of S.M. and D.E. and seldom visited them after the court awarded her custody on February 24, 2003; (2) Mother moved out of Father's home with the children and failed to disclose their whereabouts; and (3) Mother suffered from "mental problems," a brain tumor, epileptic seizures, and memory loss. Appellant's App. at 157.

But Mother presented ample evidence to substantiate her claims that Father's testimony at the custody hearing was false and misleading. First, Mother asserted that Father refused to give her the children after the court had awarded her custody and that he prevented her from visiting them. Second, she admitted that she took the children, but stated that she did so

only after Father physically attacked and sexually assaulted her. Further, Mother claimed that the prosecutor who filed the charges against Father had instructed her not to communicate with Father directly, that Mother then informed Father's brother of the children's whereabouts, and that Father regularly contacted S.M. and D.E., who were living with their grandparents. Finally, in response to Father's testimony regarding her health, Mother categorically denied that she suffered from seizures, excessive memory loss, or any type of mental illness, and clarified that the tumor that was removed had been located on her optic nerve.

Moreover, Mother argues that she is better able to provide S.M. and D.E. with a safe and stable environment. As support for that proposition, Mother points to Father's multiple relocations, erratic work history, previous criminal convictions, and pending criminal charges, some of which include allegations of domestic violence. In contrast, Mother asserted at the hearing on her motion to correct error that she holds a good job, that she pays support, that she has not missed any opportunities to visit her children, and that Ginger Schneck, a Child Protective Services worker who had met with both parents and evaluated their respective living circumstances, was prepared to testify that she believed it was in S.M.'s and D.E.'s best interests that Mother be named the custodial parent. Based on all of that evidence, we cannot conclude that it was an abuse of discretion for the trial court to find that Mother presented a meritorious defense. *See Smith,* 711 N.E.2d at 1265.

In sum, Mother has shown sufficient grounds for relief and a meritorious defense. Accordingly, we hold that the trial court did not abuse its discretion when it granted Mother's motion to correct error

and set aside its previous default judgment against her.

## The Trial Rule 52 Motion

 Father also contends that the trial court erred when it failed to issue specific findings of fact and conclusions thereon despite Mother's request that it do so pursuant to Trial Rule 52. But Father's reliance on Trial Rule 52 is misplaced. Because this is an appeal from a motion to correct error, Indiana Trial Rule 59 provides the proper framework for analyzing Father's claim. Trial Rule 59(J) states, in relevant part:

If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

The procedural requirements outlined in Trial Rule 59(J) have been characterized as "paramount," and the process of entry of the requisite findings as "arduous and time-consuming." *Malacina v. Malacina,* 616 N.E.2d 1061, 1063 (Ind.Ct.App.1993). The purpose of the requirements is to provide the parties and the reviewing court with the theory of the trial court's decision. *Id.* The findings may summarize the evidence so long as the summary is complete enough to facilitate appellate review. *Id.*

In *Malacina,* we addressed the requirement that a trial court issue findings when it awards corrective relief pursuant to Trial Rule 59. That case involved the denial of a mother's petition to modify child support followed by the trial court's grant of her motion to correct error. *Id.* at 1062. Without making any findings, the trial court ordered a new trial on the petition. *Id.* On appeal, we concluded that the lack of findings, in violation of requirements set forth in Trial Rule 59(J), precluded our review, and we remanded the case to the trial court with instructions to enter its reasons for granting the motion to correct error and any special findings of fact as were necessary. *Id.* at 1063.

While *Malacina* is procedurally similar to the case at bar, it is easily distinguishable. In *Malacina,* there is no indication that either party was unable to present evidence at the hearing on the petition to modify child support, and the trial court determined, after hearing *all the evidence,* that the situation did not warrant a modification of child support. *Id.* at 1062. Subsequently, after oral argument, the trial court granted the mother's motion to correct error. *Id.* Its decision to grant that motion was a decision to re-evaluate its previous judgment regarding the child support order.

Here, however, the trial court modified the child custody arrangement without hearing *any* evidence from Mother. Based solely upon Father's testimony on December 4, 2003, the trial court awarded Father custody of S.M. and D.E. and ordered Mother to pay child support. Then, on February 2, 2004, it denied Mother's motion to set aside default judgment after hearing brief arguments by counsel for each party. Thus, in this case, the trial

court's decision to grant Mother's motion to correct error was a decision to afford Mother the opportunity to present evidence, not a decision to reweigh the evidence.

 Our function in reviewing the grant of a motion to correct error does not include speculating on the reasons for the trial court's decision. *Id.* at 1063. In *Malacina,* the lack of findings prevented us from being able to ascertain the trial court's rationale for revisiting the issue of child support. *See id.* But here, we need not speculate. When Mother's motion to correct error is read together with her motion to set aside default judgment, it is readily apparent that the relief granted was based on the court's determination that Mother proved mistake or excusable neglect and made a prima facie showing of a meritorious defense. Under these circumstances, remanding this case to the trial court with instructions to enter findings is unnecessary and would not aid our review. Moreover, it would elevate form over substance. The requirements set forth in Trial Rule 59(J) exist to facilitate appellate review, and, in this case, we are not hindered by the trial court's failure to issue findings. *See id.* Without in any way minimizing the importance or utility of the procedural requirements outlined in Trial Rule 59(J), we hold that the trial court's failure to issue findings pursuant to that rule does not require remand in this case.

## CONCLUSION

The trial court has a duty to determine whether a modification of existing support and custody arrangements is in the best interests of the children, and its decision to grant Mother's motion to correct error and to hold a new hearing comports with that duty. Accordingly, we hold that the trial court did not abuse its discretion when it granted Mother's motion to correct error. In addition, the trial court's failure to issue findings in accordance with Trial Rule 59(J) is not reversible error because its rationale is readily apparent from its ruling.

Affirmed.

SULLIVAN, J., and BARNES, J., concur.