**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANTS:

**GARY M. SELIG**
Gary M. Selig, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**ALAN M. GILL**
The Law Office of Alan M. Gill
Carmel, Indiana

FILED

Feb 14 2013, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID GARDEN and STAR HOMES, )
INC. d/b/a GARDEN HOMES REALTY, )
                                 )
     Appellants, )
                                 )
        vs. )     No. 49A02-1206-CC-523
                               )
LUCAS INTERNATIONAL, LLC and )
WADE LUCAS, )
                                 )
     Appellees. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1106-CC-22401

**February 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

David Garden and Star Homes, Inc., d/b/a Garden Homes Realty ("Star Homes" and, together with David Garden, "Garden"), appeal the trial court's denial of their motion to set aside default judgment. Garden raises one issue, which we revise and restate as whether the court abused its discretion in denying their motion to set aside default judgment. We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 8, 2011, Wade Lucas and Lucas International, LLC (together, "Lucas") filed a verified complaint against Garden alleging breach of contract with respect to three promissory notes evidencing loans made by Lucas to Garden,[1] conversion and theft of earnest money paid by Lucas to Garden which Garden failed to return, and breach of contract with respect to an agreement for certain property repairs for which Lucas had paid Garden. An entry in the trial court's chronological case summary ("CCS") on June 13, 2011, indicates that a summons was served by certified mail service at 1:00 p.m. on that day. The CCS does not show any entries between June 13 and July 27, 2011.

On July 27, 2011, Lucas filed a motion for entry of default and default judgment against Garden. The motion stated that Garden had been served with the Lucas's complaint and summons on June 13, 2011, that Garden's responsive pleadings were due on or about July 6, 2011, that the time Garden had in which to file responsive pleadings to the complaint had expired, and that Garden was not known to be an infant or

---

[1] The complaint alleged that two promissory notes evidenced loans by Lucas to Garden of $5,000 each, that a third promissory note evidenced a loan of $10,000, and that Garden had failed to pay on the notes as agreed; that Garden retained $500 of earnest money after a potential purchase of a property was taken off the market and thus committed conversion and theft; and that Lucas paid Garden $3,000 for certain repair work which was not performed as agreed.

2

incompetent or believed to be in military service, and sought default judgment as to liability against Garden. The CCS does not show any entries between July 27 and September 27, 2011.

On September 27, 2011, the trial court issued an order which granted Lucas's July 27, 2011 motion in its entirety and ordered that "Default Judgment as to liability is hereby entered on [Lucas's] Complaint versus [Garden]. A hearing on the issue of damages will be scheduled at a later date." Appellant's Appendix at 28. The CCS does not show any entries between September 27 and November 30, 2011. A CCS entry on November 30, 2011, indicates that Lucas filed a motion for a hearing on the issue of damages.

On December 8, 2011, Garden filed a motion to set aside default judgment which stated that Garden "did not receive service as the return on the postal receipt does not contain defendant Garden's signature but the signature of one Alisha Howard[2] who is a person unknown to [Garden]." Id. at 30. Garden's motion also stated that "the notice requesting a default judgment filed herein on September 27, 2011,[3] was mailed to a prior address of defendants and, therefore, defendants were unaware of the proceedings herein" and "[t]hat defendants have a meritorious defense." Id.

On May 21, 2012, the court held a hearing on Garden's motion. At the hearing, when asked if he was ever served with any notice there was a case pending against him

---

[2] Howard's name is spelled as Alisha in the transcript of the May 21, 2012 hearing and in Garden's motion but as "Alysha Howard" on the check stub admitted as Plaintiff's Exhibit 1 at the hearing.

[3] As noted above, Lucas's motion for default judgment was filed on July 27, 2011, and the court granted the motion on September 27, 2011.

by Lucas, David Garden answered "[a]bsolutely not." Transcript at 5. Garden acknowledged that a person named Alisha Howard signed at his office for receipt of summons, and when asked whether he knew an Alisha Howard, David testified "[n]o, this is a case where a mistaken identity, I do know Ashley – I was introduced – the woman in the back to me is Ashley." Id. David testified that Howard's grandmother had been a tenant in one of Garden's properties, that Howard's grandmother faced eviction from the property, that Howard attempted to negotiate terms for a rent reduction, that Garden had an employee who was ill, that Howard worked a few days answering phones, and that Garden gave her grandmother a rent reduction. David testified that Howard "was residing there as well." Id. at 7. When asked whether Howard ever gave him any papers regarding the case such as a summons or a complaint, David testified "[a]bsolutely not" and that the first time he learned that there had been a default judgment entered against him was "[w]hen Wade Lucas called [him] laughing saying I got you now – sometime [at] the end of September of '11." Id. When asked if he felt he had "a meritorious defense to [Lucas's] claim," David testified "[b]ased on the documentation I have in that file right there absolutely." Id. David further testified that Garden had moved offices during the summer of 2011 and that it was possible that the notice for the default could have come to his old address and that "the move was quite chaotic." Id. at 8. David also testified that he had "deeded over a property to [Wade Lucas] that took over thirty thousand dollars in equity" and that Wade had "been collecting seven hundred fifty dollars a month rent even though I'm also on the title as well, so each much [sic] he collects seven hundred and fifty dollars which I'm entitled to half." Id. When asked

4

"[s]o there is in fact a dispute as to how much money you owed if any," David answered "[c]orrect." Id. at 8-9.

On cross-examination, when asked when he moved offices, David answered that "[t]here was a transition period of over 30 days" and that he did not know the exact dates. Id. at 12. David indicated that he had his mail forwarded. When asked if he had any discussions with Wade between June and September 2011, David answered "no" and "[n]ot till late September." Id. at 13. The court questioned David and asked whether Garden's office address at one point was 533 Turtle Creek South, and David answered affirmatively. The court then asked whether Garden moved the previous summer, and David indicated "[y]es to 516 East Mills." Id. When the court asked whether he knew a person named Alisha Howard, David testified that he was not familiar with her at that time and that he dealt with numerous renters.[4]

---

[4] Specifically, the following exchange occurred between the court and David Garden:

Q.      So this name Alisha Howard you don't know anybody named Alisha Howard, you don't know that name?

A.      I am now, but I wasn't back then, I mean I'm familiar with that name now.

Q.      Okay. Do you think there is a person named Alisha Howard?

A.      Um . . . There was someone who signed Alisha Howard but . . .

Q.      Okay and do you know who that person one [sic] that signed Alisha Howard?

A.      I do not.

Q.      Okay. So you're but you say you think somebody name[d] Ashley signed Alisha Howard is that what you're saying?

A.      I'm saying that – this woman in the back of the courtroom I assumed to be Ashley.

Q.      Okay and you think she signed it?

5

Wade Lucas testified that he had discussions with David between June and September 2011 which indicated that David was aware of the lawsuit, that he had called and exchanged e-mail messages with David regarding their partnership and that David had stated on the phone that he wanted to mediate, and that he received several phone calls from individuals who worked for Garden on July 5, 2011. Wade indicated that he and David discussed settling the lawsuit and that David's testimony that Wade had no discussions with him during that time period was incorrect. On cross-examination, when asked if he remembered making a phone call in September "saying something about I got you," Wade testified that he "said that sometime in December, January," that he had made the statement in a voicemail for David, and that David called him back and "left a voicemail that if [he] file[d] bankruptcy [Wade] won't get anything." Id. at 19-20.

---

A. I believe so.

Q. And you think she signed Alisha Howard?

A. I believe that's, yes.

Q. You don't know why?

A. I'm, well I'm assuming it's her name but I wasn't familiar with her name at that time.

Q. Okay, so the Ashley is a mistaken name to you?

A. Mistaken identity.

Q. Okay.

A. I deal with numerous renters.

Q. Okay.

A. And a lot of people come through our doors, so it's a case of mistaken identity.

Transcript at 13-15.

6

Howard testified that she worked for Garden from May 2011 through July 2011 and that she worked for more than just a couple of days. Howard testified that, while working for Garden, she was served with a complaint and that she had signed for it. When asked to explain what occurred after she signed for it, Howard testified:

> Mr. Garden was gone, I sat it on his desk – he came back 20 minutes, half hour later[.] I walked into his office [and] said hey did you see that[,] I had to sign for it so it's probably pretty important, and he picked [it] up and read [it] and he said Wade Lucas a f------ nut job, threw it in the trash.

Id. at 23. The court admitted as Plaintiff's Exhibit 1 a copy of a paystub by Garden to Howard. Howard testified that the paystub did not show that any amounts were withheld because David usually pays his employees in cash. Howard testified that she was not a tenant and did not live in any of Garden's properties, that she had stayed at David Garden's house for about a week and babysat his son, and that she did not work for Garden during the time period that the company was moving offices. Howard testified that the office move occurred after she had left her employment with Garden, which was at some point during "the first couple of weeks" of July. Id. at 26.

Following Howard's testimony, the trial court questioned David Garden regarding a meritorious defense, and the following exchange occurred between Garden's counsel and the court:

Court: I have just one quick question on the meritorious defense – can you summarize that for me [be]cause I wasn't sure I mean the question was [d]o you have a meritorious defense he said yes based on what's in this file I do, I'm not sure it was more specific after that but . . .

Counsel: No we didn't . . . it's a – has [sic] you heard both of them Mr. Garden and Mr. Lucas testified they had a partnership agreement.

7

Court:       Right.

Counsel:     So that would be the, would be an argument.

Court:       Okay.

Counsel:     A lawsuit over who owed who what.

Court:       Understood.

Id. at 28-29.

On May 29, 2012, the trial court denied Garden's motion to set aside stating that Garden failed to show sufficient reason under Ind. Trial Rule 60(B) to relieve them from judgment and failed to show a meritorious claim or defense. Garden now appeals.

## ISSUE AND ARGUMENTS

The issue is whether the court abused its discretion in denying Garden's motion to set aside default judgment. Garden argues that the motion for default judgment was mailed to the wrong address, that David Garden did not receive any notice of the motion, and that the lack of actual notice justifies granting the motion to set aside the default judgment. Garden further argues that although temporary employee Howard signed for the summons and complaint, Garden never received it, that the office was chaotic in June with the process of moving, that David Garden did not leave his mail unattended but had hired Howard to handle such office work, and that the breakdown in communication in her failure to give it to David is excusable neglect. Garden also argues that it presented a meritorious defense at the hearing, that David Garden testified that the parties had a partnership and disputed the amounts owed to Lucas, that Garden had repaid some of the

8

debt by deeding property with $30,000 equity to Lucas, and that Lucas owed Garden money from rent that Lucas collected and was obligated to share.

Lucas maintains that the court did not abuse its discretion in denying Garden's motion to set aside default judgment and that the facts and inferences clearly show that Garden inexcusably neglected this matter when Garden had actual notice of the proceedings, threw the complaint in the trash, and intentionally failed to respond or otherwise take this matter seriously. Lucas points to Wade Lucas's testimony that, through telephone conversations and e-mail exchanges between Wade and David prior to the time the motion for default judgment was filed, Garden was aware of the proceedings. Lucas further argues that excusable neglect did not occur here due to a breakdown in communication or anything else outside of Garden's control, that for a breakdown in communication to occur the party who failed to timely plead must have at least taken the steps expected of him, and that David Garden ignored the complaint when it was received and threw it in the trash. Lucas finally argues that Garden failed to present a meritorious defense, that Garden disputes only the amount owed, and that this goes to damages, not liability, and can be addressed at a damages hearing before the trial court.

STANDARD OF REVIEW

The decision whether to set aside a default judgment is given substantial deference on appeal. Kmart v. Englebright, 719 N.E.2d 1249, 1253 (Ind. Ct. App. 1999), trans. denied. Our standard of review is limited to determining whether the trial court abused its discretion. Id. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court

9

has misinterpreted the law. Id. We may affirm a general default judgment on any theory supported by the evidence adduced at trial. Id. "The trial court's discretion is necessarily broad in this area because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case." Id. (citing Siebert Oxidermo, Inc. v. Shields, 446 N.E.2d 332, 340 (Ind. 1983)); see also Walker v. Kelley, 819 N.E.2d 832, 836-837 (Ind. Ct. App. 2004). Moreover, no fixed rules or standards have been established because the circumstances of no two cases are alike. Id. A cautious approach to the grant of motions for default judgment is warranted in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. Id. Furthermore, reviewing the decision of the trial court, we will not reweigh the evidence or substitute our judgment for that of the trial court. Id. Upon a motion for relief from a default judgment, the burden is on the movant to show sufficient grounds for relief under Indiana Trial Rule 60(B). Id.

Generally, default judgments are not favored in Indiana. Shane v. Home Depot USA, Inc., 869 N.E.2d 1232, 1234 (Ind. Ct. App. 2007). The trial court's discretion should be exercised in light of the disfavor in which default judgments are generally held. Allstate Ins. Co. v. Watson, 747 N.E.2d 545, 547 (Ind. 2001). Any doubt as to the propriety of a default judgment must be resolved in favor of the defaulted party. Id.

ANALYSIS

The entry of a default judgment is authorized by Ind. Trial Rule 55(A), and pursuant to Trial Rule 55(C) a judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of Trial Rule

10

60(B). Ind. Trial Rule 60(B) provides in part that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect; . . . ." Ind. Trial Rule 60(B)(1). A motion shall be filed not more than one year after the judgment was entered for purposes of Trial Rule 60(B)(1), and a movant filing a motion for reasons under Trial Rule 60(B)(1) must allege a meritorious claim or defense.

There is no general rule as to what constitutes excusable neglect under Trial Rule 60(B)(1). Kmart, 719 N.E.2d at 1254 (citing In re Marriage of Ransom, 531 N.E.2d 1171, 1172 (Ind. 1988)). Each case must be determined on its particular facts. Id. (citing Boles v. Weidner, 449 N.E.2d 288, 290 (Ind. 1983)). The following facts have been held to constitute excusable neglect, mistake, or surprise:

> (a) absence of a party's attorney through no fault of party; (b) an agreement made with opposite party, or his attorney; (c) conduct of other persons causing party to be misled or deceived; (d) unavoidable delay in traveling; (e) faulty process, whereby party fails to receive actual notice; (f) fraud, whereby party is prevented from appearing and making a defense; (g) ignorance of the defendant; (h) insanity or infancy; (i) married women deceived or misled by conduct of husbands; (j) sickness of a party, or illness of member of a family.

Id. (citing Cont'l Assurance Co. v. Sickels, 145 Ind. App. 671, 675, 252 N.E.2d 439, 441 (1969)).

Here, the record reveals that Lucas's complaint was filed on June 8, 2011, that the summons was served by certified mail at approximately 1:00 p.m. on June 13, 2011, and that Lucas filed a motion for entry of default and default judgment on July 27, 2011. Howard testified that, while she was working for Garden, the company was served with

the complaint and summons and that she had signed for them.  Howard testified that, at the time the complaint was served, David Garden was gone, that she "sat it on his desk," that David "came back 20 minutes, half hour later," that she "walked into his office [and] said hey did you see that[,] I had to sign for it so it's probably pretty important," and that David "picked [it] up and read [it] and . . . said Wade Lucas a f------ nut job [and] threw it in the trash."  Transcript at 23.  Although David testified that Howard worked for him for only a few days, that Howard was residing in one of his properties, that Garden's offices moved during the summer of 2011 and that "[t]here was a transition period of over 30 days," see id. at 12, that he had not had any discussions with Wade Lucas between June and late September 2011, and that Howard "[a]bsolutely [did] not" give him any papers regarding the case such as a summons or complaint, see id. at 7, the court also heard testimony from David that he had his mail forwarded, testimony from Wade Lucas that he had discussions and exchanged e-mail messages with David between June and September 2011 which indicated that David was aware of the lawsuit, and testimony from Howard that she worked for Garden from May 2011 through July 2011, that she signed for and gave the complaint to Garden, that she was not a tenant and did not live in any of Garden's properties, that she had stayed at David Garden's house for about a week and babysat his son, that she did not work for Garden during the time period that its offices were moving, and that the office move had occurred after she had left her employment with Garden at some point during the first couple weeks of July 2011.

While a "breakdown in communication" may be sufficient to establish mistake, surprise, or excusable neglect under Trial Rule 60(B)(1), see Whittaker v. Dail, 584

12

N.E.2d 1084, 1087 (Ind. 1992) (finding an abuse of discretion in not setting aside a default judgment where a breakdown in communication between insurer and insured, which resulted in insured's failure to appear at trial, constituted excusable neglect, and where there was no evidence of "foot dragging" by defendant), not all breakdowns in communication rise to the level of excusable neglect. See Smith v. Johnston, 711 N.E.2d 1259, 1262 (Ind. 1999) (holding that a breakdown in communication which resulted from defendant's failure to open his mail constituted neglect, but not excusable neglect). To the extent Garden claims that there was a breakdown in communication which constituted excusable neglect, we note that the trial court, in exercising its discretion, found the evidence of neglect presented by Garden to be unpersuasive. The trial court's discretion in deciding whether to set aside a default judgment is necessarily broad because any determination of excusable neglect must turn upon the particular facts and circumstances of each case. See Walker, 819 N.E.2d at 836. Garden was given adequate opportunity to present evidence of excusable neglect to the trial court during the May 21, 2012 hearing. To the extent Garden argues that he did not receive actual notice of the lawsuit or the default, the trial court heard testimony as set forth above from David Garden, Wade Lucas, and Howard, and did not find that the evidence showed that Garden failed to receive actual notice of the lawsuit or otherwise demonstrated excusable neglect. We will not reweigh the evidence or substitute our judgment for that of the trial court. See Kmart, 719 N.E.2d at 1253.

Based upon the record, and in light of the deference we afford to the trial court's decision, we cannot say that Garden satisfied their burden of demonstrating that their

13

failure to respond to Lucas's complaint constituted excusable neglect under Trial Rule 60(B)(1). See Smith, 711 N.E.2d at 1262 (finding that the trial court had not abused its discretion in declining to set aside default judgment and noting that "Smith was aware that the person who normally handled legal mail was no longer doing that job," that "[n]onetheless, Smith ignored his mail, including the summonses and motion for default," that "[w]e do not agree that the failure of Smith to read his mail amounts to a breakdown in communication sufficient to qualify as excusable neglect under Trial Rule 60(B)(1)," that "Smith's case is distinguishable from our previous decisions finding excusable neglect for a breakdown in communication," and that "[i]n those cases the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in the failure to appear"); see also Whittaker, 584 N.E.2d at 1087 (stating that not "*every* breakdown in communication *requires* that a judgment be set aside" but that "where *the unchallenged credible testimony* establishes a breakdown in communication which results in a party's failure to appear for trial, the grounds for setting aside a default judgment . . . have been satisfied . . . .") (emphasis added).

In addition, in order to obtain relief under Trial Rule 60(B)(1), Garden must also show that he alleged a meritorious defense. A meritorious defense is one showing that, if the case was retried on the merits, a different result would probably be reached. Baxter v. State, 734 N.E.2d 642, 646 (Ind. Ct. App. 2000). To establish a meritorious defense, a party need not prove the absolute existence of an undeniable defense. Bunch v. Himm, 879 N.E.2d 632, 637 (Ind. Ct. App. 2008). Rather, a defendant need only make a *prima*

14

*facie* showing of a meritorious defense. Id. Here, we observe that Lucas's July 27, 2011 motion sought "a default judgment as to liability." Appellant's Appendix at 27. When asked if he felt he had "a meritorious defense to [Lucas's] claim," David testified "[b]ased on the documentation I have in that file right there absolutely." Transcript at 7. When later asked to summarize his claim of a meritorious defense, Garden's counsel stated that Garden and Lucas "testified they had a partnership agreement" and that "that would be the, would be an argument . . . [a] lawsuit over who owed who what." Id. at 29. To the extent that Garden articulated or attempted to articulate a defense, it appears that the argument relates to the relative damages or amounts Garden may owe Lucas, and Garden failed to address any defense it may have had in response to the specific claims set forth in Lucas's complaint, including the allegations that Garden failed to make payments as required on three promissory notes, that Garden improperly retained certain earnest money, and that Garden failed to perform certain repair work as agreed. The trial court ordered that "Default Judgment *as to liability* is hereby entered on [Lucas's] Complaint versus [Garden]" and that "[a] hearing on the issue of damages will be scheduled at a later date." Appellant's Appendix at 28 (emphasis added). Based upon the record and Lucas's allegations, even if Garden had demonstrated excusable neglect, we cannot say that Garden alleged a meritorious defense to Lucas's claim which would specifically negate an element of the claims.

15

CONCLUSION

Finding that Garden has not demonstrated excusable neglect and a meritorious defense, we conclude that the trial court did not abuse its discretion in denying Garden's motion to set aside the default judgment.

For the foregoing reasons, we affirm the judgment of the trial court.

BAILEY, J., and VAIDIK, J., concur.