Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 26 2014, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:
ROBERT D. STEPHENS and
THOMAS THEOHARY:

**CHARLES E. DAVIS**
Davis Law, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES:

**RICHARD W. MORGAN**
**JEROME W. McKEEVER**
Pfeifer, Morgan & Stesiak
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT D. STEPHENS, RYAN MOE, | ) | |
| THOMAS THEOHARY, and | ) | |
| LAW ENFORCEMENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1305-CT-242 |
| | ) | |
| BRIAN A. COSTA and AMY COSTA, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jenny Pitts Manier, Judge
Cause No. 71D05-0909-CT-188

**February 26, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

St. Joseph County SWAT team Corporal Brian A. Costa was injured during a sales demonstration of civilian- and military-use distraction devices conducted by representatives of Law Enforcement Technologies, Inc. ("LET"), an out-of-state corporation. Brian and his wife, Amy, filed a lawsuit against LET, its president, Robert D. Stephens, and corporate officers Thomas Theohary and Ryan Moe, among others, alleging negligence and loss of consortium. The trial court clerk mailed a copy of the summons and complaint to Theohary, a Maine resident, at LET's address in Colorado; Moe signed the certified mail receipt. An attorney filed an appearance on behalf of LET, Stephens, Theohary, and Moe but later withdrew. The clerk mailed additional documents to Theohary at LET's address, and they were returned as undeliverable. The Costas' counsel mailed several documents, including a request for admissions, to Theohary in Maine; he signed the certified mail receipts but did not respond to the request for admissions. Theohary and Moe failed to appear at trial, and Stephens appeared pro se. The trial court found Theohary and Moe in default and entered judgment jointly and severally against Stephens, Theohary, Moe, and LET and in favor of the Costas. Theohary filed a motion to correct error and a motion for relief from judgment, asserting that the default judgment against him was void for lack of personal jurisdiction. Stephens also filed a motion to correct error. The trial court denied Theohary's and Stephens's motions.

On appeal, Theohary contends that the trial court erred in denying his motions. He contends that the trial court never acquired personal jurisdiction over him because he never received service of process; he never authorized the attorney to enter an appearance for him; and he does not have sufficient minimum contacts with Indiana. We agree with Theohary that the trial court never acquired personal jurisdiction over him because he never received service of process and he has sufficiently established that he did not authorize the attorney to enter an appearance for him. We conclude, however, that Theohary does have sufficient minimum contacts with Indiana, and therefore we reverse and remand for further proceedings as to Theohary. Stephens contends that the trial court's judgment on the Costas' claims is not supported by sufficient evidence and that he cannot be held personally liable. We disagree on both counts and therefore affirm the trial court's judgment as to Stephens.

**Facts and Procedural History**

The relevant facts most favorable to the trial court's rulings are these. LET was incorporated in New Mexico and has its principal place of business in Colorado Springs, Colorado. LET researches and develops products for law enforcement and the military. In late 2008 or early 2009, LET's president, Stephens, and his fellow corporate officers Theohary and Moe conducted a demonstration of LET's civilian-use distraction devices, also known as diversionary devices or flash bangs, for members of the St. Joseph County SWAT

3

team in Mishawaka.[1] The SWAT team was interested in purchasing LET's distraction devices because of the "selling point" that they would "lay flat" and not "launch" when detonated. Tr. at 15.

On June 2, 2009, Stephens, Theohary, and Moe conducted a second demonstration for the SWAT team inside a Mishawaka police station. Brian did not attend the first demonstration but was present for the second demonstration. Moe showed a PowerPoint presentation upstairs and then went to the downstairs shooting range and detonated two civilian-use devices (known as the R4) and two prototype military-use devices (known as the R5), which were still under development. Brian then detonated one of the SWAT team's devices, which team members felt was more effective than the R4 device. Stephens, Theohary, and Moe then had a discussion about detonating a third R5 device. Moe deployed the device, which landed approximately a foot outside the designated deployment area and exploded into pieces, injuring Brian's leg. Due to his injuries, Brian did not return to work until September 2009 and was limited to light duty until February 2010.

On September 17, 2009, the Costas filed a complaint for negligence and loss of consortium against LET, Stephens, Moe, Theohary, and LET representative Marcus Caldwell

---

[1] According to Mishawaka Police Department Lieutenant Bryan Fox, "[a] distraction device is a device that's used to usually cause a distraction that either does … a loud concussion, a flash, that allows a little bit of a disruption in the person, before making an entry into a room or into a business." Tr. at 13. A distraction device works like a hand grenade. The operator removes a pin connecting a "spoon" to the device; once the spoon is released, "the device has a time limit, either a second and a half, three and a half seconds, five seconds, whatever it's set to, for the device to be thrown to the area where you want it." *Id*. at 23. The devices are designed to remain intact after detonation. *Id*. at 41.

4

in St. Joseph Superior Court.[2]  On September 21, 2009, the court clerk issued complaints and summonses to the defendants.  Theohary's complaint and summons, which listed his title as "Engineer," were sent via certified mail to LET's address in Colorado Springs.  Appellees' App. at 9.[3]  The chronological case summary ("CCS") states, "CERTIFIED MAIL TO THOMAS THEOHARY SIGNED 09-25-09." Appellants' App. at 1.  A copy of the certified mail receipt is not in the record before us.  At the hearing on Theohary's motion to correct error/motion for relief from judgment, Theohary's counsel stated that Moe had signed the receipt, and the Costas' counsel did not dispute this.  Tr. at 114.

On October 15, 2009, attorney Clint Zalas entered an appearance on behalf of all defendants, including Theohary.  Also on that date, Zalas filed an answer and a jury trial demand and asserted the affirmative defense of incurred risk.  Zalas did not assert the defenses of insufficient service of process or lack of personal jurisdiction.

On November 21, 2011, Zalas filed a motion for leave to withdraw his appearance, which reads in relevant part as follows:

> 1.      There has been a breakdown in the attorney-client relationship rendering any further representation unreasonably difficult.
>
> 2.      Counsel has provided at least fifteen (15) days written notification to Mr. Stephens, Ryan Moe, Thomas Theohary, Marcus Caldwell

---

[2]  The complaint was later amended to add other defendants, who (along with Caldwell) were dismissed from the case.

[3]  The Costas' counsel was responsible for furnishing the complaints and summons, as well as the defendants' addresses, to the clerk.  *See* Ind. Trial Rule 4(B) ("Contemporaneously with the filing of the complaint or equivalent pleading, the person seeking service or his attorney shall furnish to the clerk as many copies of the complaint and summons as are necessary."); Ind. Trial Rule 4.11 ("Whenever service by registered or certified mail … is authorized, the clerk of the court … shall send the summons and complaint to the person being served at the address supplied upon the summons, or furnished by the person seeking service.").

and Law Enforcement Technologies, Inc., of his intent to withdraw from this matter. The primary contact for all of the aforementioned individuals and entity is Robert Stephens [, whose last known address was in Mishawaka].

Appellants' App. at 12. Theohary was not listed on the certificate of service for Zalas's motion. On November 23, 2011, the trial court issued an order setting a hearing on Zalas's motion for December 6, 2011. The clerk mailed a copy of the order to Theohary at LET's Colorado Springs address; the letter was returned as undeliverable. On December 2, 2011, the trial court reset the hearing for December 16. After the hearing, the trial court issued an order granting Zalas's motion to withdraw. The order does not appear in the record before us, and nothing indicates whether (or to whom) a copy of the order was mailed.

On September 11, 2012, the Costas sent eight requests for admissions to Theohary via certified mail to an address in York Harbor, Maine. On September 24, 2012, Theohary received and signed for the requests, to which he never responded. On November 2, 2012, the Costas filed a motion to deem the requests admitted pursuant to Indiana Trial Rule 36. The trial court subsequently granted the motion.

On November 6, 2012, the Costas mailed to Theohary their contentions, witnesses, and exhibits list and a copy of the trial court's pretrial order dated September 26, 2011. Among other things, the pretrial order set a discovery deadline of November 4, 2012, ordered mediation to be completed by November 4, 2012, set a pretrial conference for November 20, 2012, and set a jury trial for December 4, 2012. The Costas' cover letter advised Theohary that he had signed for the requests for admission on September 24, 2012, but had failed to respond. The foregoing were sent via certified mail to Theohary's York Harbor address. On

November 16, 2012, Theohary signed the certified mailing receipt, on which the York Harbor

address was crossed out and replaced with a handwritten address in Bradenton, Florida. At

the November 20 pretrial conference, Moe and Theohary failed to appear, and Stephens

appeared pro se. Stephens filed a jury trial waiver, and a bench trial was set for December 5,

2012.

At trial, the Costas appeared personally and by counsel. Stephens appeared pro se and

stated that he was "here on behalf of myself but also fellow officers of the corporation Tom

Theohary and Ryan Moe." Tr. at 6. The trial court informed Stephens, who is not an

attorney, that he could represent only himself and not Theohary, Moe, or LET. The court

found that Theohary, Moe, and LET had failed to appear and were defaulted. The court then

heard evidence from both sides, including testimony from the Costas and Stephens. Stephens

testified that he owned fifteen percent of LET in 2009 and that both Theohary and Moe had

"very small percentage ownerships" in the company. *Id*. at 38. According to Stephens, "Mr.

Theohary was an unpaid consultant and Mr. Moe, while an employee of the company, was

truly not being paid for … a good 10 months before this incident happened." *Id*. Stephens

also testified, "[A]s officers of the corporation we showed up [at the Mishawaka police

station] to demonstrate the device for a second time. I recognize my fellow officers are not

here to represent their own interest. I can tell you they're good guys, honorable fellas." *Id*. at

97. At the close of evidence, the trial court took the matter under advisement.[4]

---

[4] The court also admitted evidentiary exhibits offered by the Costas, including a video of the demonstration and a police report regarding the incident, but Theohary and Stephens did not submit them on appeal.

On December 18, 2012, the court issued an order directing the Costas' counsel to submit a posttrial brief by January 30, 2013. The Costas' counsel filed a brief on January 29, 2013. On February 6, 2013, the trial court entered judgment jointly and severally against Stephens, Moe, Theohary, and LET and in favor of Brian and Amy for $65,000 and $20,000 respectively, plus costs. On February 8, 2013, Stephens filed a posttrial reply brief. On February 11, 2013, the trial court issued a judgment stating that it had reviewed Stephens's brief and determining that its earlier judgment remained "in full force and effect." Appellants' App. at 9. The CCS indicates that a copy of at least one of the judgments was mailed to Theohary at LET's Colorado Springs address and was returned not deliverable as addressed on February 15, 2013. *Id*. at 6.

On March 6, 2013, Theohary, by counsel, filed a motion to correct error and motion for relief from judgment, along with a supporting affidavit. Among other things, Theohary's affidavit states that he was "was not properly served with a summons in this case" because LET was not his place of business; that he did not authorize anyone at LET to accept service of the summons for him, and no one forwarded it to him; that he was a resident of and employed in Maine at the time of Brian's injury and the filing of the complaint; that he did not authorize Zalas to represent him and never "paid or retained" or spoke or corresponded with him; that he was never served with any notice "that Zalas was withdrawing as counsel for anyone"; that he has never been an engineer, employee, or officer of LET, but merely an "independent business consultant" who had provided a business plan to LET; that he "had nothing to do with the manufacture, design, assembly or proper use of the product that

8

injured" Brian; that LET did not pay him for his June 2009 visit to Mishawaka, which was done solely "out of friendship for Mr. Stephens"; that he "was present during some discussion by Ryan Moe to use that final device" but did not consent to or authorize its use and "had no authority one way or the other to agree or disagree with the decision"; that he "was never asked by anyone to waive [his] right to jury trial"; and that he "did not appear at the trial as [he] had no knowledge of proper service to bring [him] into the case other than just [his] name being used[.]" *Id*. at 48-51. In support of his affidavit, Theohary submitted LET's application to the Colorado secretary of state's office for authority to transact business in Colorado. The application does not list Theohary (or Stephens or Moe) as officers of the corporation and was filed with the secretary of state in late 2001, over seven years before Costa was injured.

On March 8, 2013, Stephens filed a pro se motion to correct error. The Costas filed responses to Theohary's and Stephens's motions. On April 18, 2013, the trial court held a hearing on the motions, at which Theohary appeared by counsel and Stephens appeared pro se. On April 23, 2013, the trial court issued an order summarily denying the motions. Theohary and Stephens, both represented by counsel, now appeal.[5]

---

[5] Moe was released from the judgment at the Costas' request in March 2013, and LET has not appealed. We note, however, that a party of record in the trial court shall be a party on appeal. Ind. Appellate Rule 17(A).

9

**Discussion and Decision**

**Section 1 – Default Judgment Against Theohary**

Theohary challenges the default judgment on the basis that it was rendered without personal jurisdiction over him and is therefore void. *See Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 816 (Ind. 2012) ("A judgment issued without personal jurisdiction is void[.]"); *see also* Ind. Trial Rule 60(B)(6) (providing for relief from judgments that are "void"). "A void judgment is a complete nullity and may be attacked at any time." *Grabowski v. Waters*, 901 N.E.2d 560, 563 (Ind. Ct. App. 2009), *trans. denied*. Generally,

> [t]he decision whether to set aside a default judgment is given substantial deference on appeal. We will not reweigh the evidence or substitute our judgment for the judgment of the trial court. Default judgments are not generally favored in Indiana, for it has long been the preferred policy of this state that courts decide a controversy on its merits. Any doubt of the propriety of a default judgment should be resolved in favor of the defaulted party.

*Fitzpatrick v. Kenneth J. Allen & Assocs., P.C.*, 913 N.E.2d 255, 263 (Ind. Ct. App. 2009) (citations omitted).

Notwithstanding the deference that we traditionally give trial courts with respect to default judgments, we note that "[p]ersonal jurisdiction is a question of law. As with other questions of law, a determination of the existence of personal jurisdiction is entitled to *de novo* review by appellate courts. This court does not defer to the trial court's legal conclusion as to whether personal jurisdiction exists." *Grabowski*, 901 N.E.2d at 563 (citations omitted).

> Once the party contesting jurisdiction, usually the defendant, challenges the lack of personal jurisdiction, the plaintiff must present evidence of a court's personal jurisdiction over the defendant, but the defendant ultimately bears the

10

burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless that lack is apparent on the face of the complaint.

*Norris v. Personal Fin.*, 957 N.E.2d 1002, 1007 (Ind. Ct. App. 2011) (quotation marks omitted). Theohary's personal jurisdiction claim entails three separate arguments: one, that he never received service of process; two, that he did not authorize Zalas to enter an appearance on his behalf; and three, that he does not have sufficient minimum contacts with Indiana. We address each in turn.

## Section 1.1 – Service of Process

Indiana Trial Rule 4(A) states, "The court acquires jurisdiction over a party or person who under these rules commences or joins in the action, is served with summons or enters an appearance, or who is subjected to the power of the court under any other law." "Without effective service of process, a trial court does not obtain personal jurisdiction over a defendant." *Norris*, 957 N.E.2d at 1007.[6] "As a rule, actual knowledge of the suit does not satisfy due process or give the court in personam jurisdiction." *Citimortgage*, 975 N.E.2d at 817 (quotation marks omitted).

Indiana Trial Rule 4.4 governs service upon nonresident persons "for acts done in this state or having an effect in this state." Trial Rule 4.4(B) provides that an individual subject to the jurisdiction of Indiana courts may be served with summons as provided by Trial Rule 4.1. Trial Rule 4.1(A) reads in pertinent part,

---

[6] The Costas contend that Theohary has waived this argument by failing to assert lack of service as an affirmative defense. As we discuss below, however, Theohary has sufficiently established that he did not authorize attorney Zalas to enter an appearance or otherwise respond on his behalf, and therefore Theohary cannot be said to have waived this argument.

11

Service may be made upon an individual, or an individual acting in a representative capacity, by:

(1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or

(2) delivering a copy of the summons and complaint to him personally; or

(3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or

(4) serving his agent as provided by rule, statute or valid agreement.

Trial Rule 4.1(A)(1) "requires that a return receipt must show receipt of the letter in order for service to be effective." *Munster v. Groce*, 829 N.E.2d 52, 59 (Ind. Ct. App. 2005). Here, the Costas sent a copy of the summons and complaint by certified mail to Theohary at LET's Colorado Springs address. Stephens's trial testimony established that Theohary was an officer of LET, and thus LET arguably could be considered Theohary's "place of business." However, it was Moe who signed the certified mail receipt attached to Theohary's summons, and additional documents mailed to Theohary at LET's address were returned as undeliverable.[7]

Trial Rule 4.16(B) provides,

Anyone accepting service for another person is under a duty to:

(1) promptly deliver the papers to that person;

(2) promptly notify that person that he holds the papers for him; or

---

[7] We note that the Costas successfully mailed requests for admissions to Theohary's Maine address but apparently did not furnish this address to the trial court clerk for purposes of the complaint and summons.

12

(3) within a reasonable time, in writing, notify the clerk or person making the service that he has been unable to make such delivery of notice when such is the case.

"[N]othing in the trial rules requir[es] that the individual to whom service of process is mailed be the one who signs the return receipts in order for service to be effective." *Precision Erecting, Inc. v. Wokurka*, 638 N.E.2d 472, 474 (Ind. Ct. App. 1994), *trans. denied*. Our supreme court has stated, however, that "[a]nyone accepting service for another person" means "anyone *with authority* to accept service for another person." *LaPalme v. Romero*, 621 N.E.2d 1102, 1106 (Ind. 1993); *see also Norris*, 957 N.E.2d at 1008 (quoting *LaPalme*). Theohary's uncontradicted affidavit states that he did not authorize anyone at LET to accept service for him and that no one at LET forwarded the summons and complaint to him. Based on the foregoing, we must conclude that service by delivery to Moe was ineffective as to Theohary.[8]

### Section 1.2 – Entry of Appearance

The question then becomes whether the trial court acquired personal jurisdiction over Theohary via attorney Zalas entering an appearance on his behalf.

> Personal jurisdiction is gained over a person who "is served with summons or enters an appearance, or who is subject[ed] to the power of the court under any other law." Ind. Rules of Procedure, Trial Rule 4(A). Without the requisite notice a summons or an appearance provides, the court lacks jurisdiction to enter and enforce judgments over the person in question.

---

[8] Trial Rule 4.15(F) provides, "No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him." However, this rule "will not cure defective service of process where no person authorized by the rules was actually served." *Barrow v. Pennington*, 700 N.E.2d 477, 479 (Ind. Ct. App. 1998) (citing *Idlewine v. Madison Cnty. Bank & Trust Co.*, 439 N.E.2d 1198, 1201 (Ind. Ct. App. 1982)).

13

*Idlewine v. Madison Cnty. Bank & Trust Co.*, 439 N.E.2d 1998, 1200 (Ind. Ct. App. 1982).

"[W]here an attorney appears there is a rebuttable presumption that he has authority to enter an appearance for a party until his authority is challenged and evidence introduced to the contrary." *Nwannunu v. Weichman & Assocs., P.C.*, 770 N.E.2d 871, 878 (Ind. Ct. App. 2002). In his affidavit, Theohary averred that he never authorized Zalas to enter an appearance for him and that Zalas never notified him that he had appeared or answered for him. Zalas's motion to withdraw states that he provided written notification to Theohary of his intent to withdraw, but this is the only evidence that Zalas had any interaction with Theohary, and the record is silent regarding whether Theohary actually received Zalas's notice. The record indicates that Theohary never received notice of the hearing on Zalas's motion to withdraw or a copy of the order granting the motion. The Costas presented no contradictory evidence. They suggest that Theohary waited too long to raise this issue but cite no authority for this proposition. *Cf. Stidham v. Whelchel*, 698 N.E.2d 1152, 1156 (Ind. 1998) ("It is a bold move, but an option available to a nonresident to ignore a pending proceeding and take the risk that a subsequent challenge to personal jurisdiction will prevail."). No attorney subsequently appeared for Theohary, and he never appeared on his own behalf.[9]

Because we must resolve any doubt regarding the propriety of the default judgment in favor of Theohary, we conclude that he has sufficiently established that Zalas did not have

---

[9] The Costas make a curious argument about Stephens acting as Theohary's agent, but it is undisputed that Stephens did not (and, as a nonlawyer, could not) enter an appearance for Theohary.

14

authority to enter an appearance for him. Therefore, we conclude that the trial court did not acquire personal jurisdiction over Theohary and reverse its denial of his motion for relief from judgment.[10]

## Section 1.3 – Sufficient Minimum Contacts

To determine whether remand for further proceedings is necessary, we must address Theohary's claim that the trial court may not acquire personal jurisdiction over him because he does not have sufficient minimum contacts with Indiana.

> The Due Process Clause of the Fourteenth Amendment and article 1, section 12 of the Indiana Constitution require that before a court may exercise personal jurisdiction over a party, that person must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The contacts to be examined must be the purposeful acts of the defendant, not the acts of the plaintiff or any third parties.

*Laflamme v. Goodwin*, 911 N.E.2d 660, 666 (Ind. Ct. App. 2009) (citations, quotation marks, and brackets omitted).[11]

---

[10] Because we reverse, we need not address Theohary's arguments regarding any waiver of his right to a jury trial or whether he was "adequately apprised of the allegations against him[.]" Appellants' Br. at 17.

[11] The *Laflamme* court went on to say,

> Our analysis as to whether personal jurisdiction exists under the Due Process Clause is guided by a two-part test. We first consider the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could reasonably anticipate being hauled into court there. If the contacts are sufficient, then we must evaluate whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice by weighing a variety of interests.

911 N.E.2d at 666 (citations and quotation marks omitted). Because Theohary does not address these considerations, neither do we.

Theohary's only argument in this regard is that he was neither an employee nor an officer of LET and that the "alleged negligent acts were those of third parties, e.g. LET or any of the other companies that were brought in by amending the complaint." Appellants' Br. at 18. The evidence most favorable to the trial court's rulings establishes that Theohary was an officer and shareholder of LET, that he attended two sales demonstrations of LET's distraction devices in Mishawaka, and that he participated in the discussion of whether to detonate the final R-5 device that injured Brian.[12] Based on the foregoing, we find Theohary's argument unavailing and conclude that he has sufficient minimum contacts with Indiana. Therefore, we remand for further proceedings as to Theohary.

## Section 2 – Sufficiency of Evidence

Stephens purports to challenge the sufficiency of the evidence supporting the trial court's judgment on the Costas' claims, but he devotes most of his argument to claiming that

---

[12] Indiana Trial Rule 4.4(A) is Indiana's long-arm jurisdiction statute and provides in pertinent part as follows:

> Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
>
> (1) doing any business in this state;

Theohary argues that he "was not doing business in Indiana" and "was not paid, nor was he to receive any monies from LET for that visit to Indiana." Appellants' Br. at 17. Stephens's trial testimony establishes that Theohary was doing business in Indiana by attending the sales demonstrations of LET's distraction devices, and Theohary cites no authority for the proposition that a person must be paid to conduct business in Indiana in order for personal jurisdiction to attach. To the extent that Theohary argues (and asserted in his affidavit) that he was not involved in deciding whether to deploy the R-5 device that injured Brian, we note that when asked why LET representatives would "be demonstrating a military device to civilian[s]," Stephens replied, "We just did." Tr. at 99. This testimony is sufficient to support a reasonable inference that Theohary was involved in the decision to deploy that device.

his rights "to defend himself and present evidence" were "improperly curtailed" by the trial court. Appellants' Br. at 24. Stephens failed to make any objections at trial, and therefore he has waived any claims in this regard. *See*, *e.g.*, *Douglas v. Monroe*, 743 N.E.2d 1181, 1187 (Ind. Ct. App. 2001) (noting that failure to raise a timely objection constitutes waiver of a claim of error); *Clark v. Simbeck*, 895 N.E.2d 315, 319 (Ind. Ct. App. 2008) (noting that pro se litigants are held to the same standard as trained counsel).

Stephens's actual sufficiency argument is convoluted and fails to mention the elements of negligence, let alone the relevant standard of review as required by Indiana Appellate Rule 46(A)(8)(b).

> In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. In determining whether a judgment is clearly erroneous, we will not reweigh the evidence or determine the credibility of witnesses but will consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence.

*Bennett v. Broderick*, 858 N.E.2d 1044, 1047-48 (Ind. Ct. App. 2006) (citation omitted), *trans. denied* (2007).

Stephens's argument is essentially this:

> [The Costas] failed to prove that there was negligence on the part of LET or its officers, as there was no testimony that the demonstration criteria dictated by the Mishawaka Police Department and its officers met any reasonable standard or protocol for the safe use of civilian and military flash bangs in that indoor range.
>
> ….

17

> [U]nder comparative negligence principles it is against the logic and effect of the evidence that [Brian's] recovery was not reduced or totally negated by his incurred risk of injury for an explosive military device.
>
> These were explosive devices that had every potential to create harm, and as such, [Brian], by taking no further precautions and participating as he did in a display of explosive devices assumed/incurred the risk, or was at least as much or more negligent than [Stephens, who] knew less about these devices than the deputies.

Appellants' Br. at 25, 27.

Incurred risk is an affirmative defense for which Stephens bore the burden of proof. *Get-N-Go, Inc. v. Markins*, 544 N.E.2d 484, 486 (Ind. 1989). Both incurred risk and apportionment of fault are questions of fact for the factfinder. *St. Margaret Mercy Healthcare Ctrs., Inc. v. Poland*, 828 N.E.2d 396, 408 (Ind. Ct. App. 2005), *trans. denied*. "In determining whether a plaintiff incurred the risk of his or her injuries, a subjective analysis is required focusing on the plaintiff's actual knowledge and appreciation of the specific risk involved and voluntary acceptance of that risk." *Id.* (quotation marks omitted). The specific risk involved here was the explosion and fragmentation of the distraction device. Brian testified that he had deployed over a thousand devices and had never seen or even heard of one fragmenting. Tr. at 67, 68. He also testified that Moe's PowerPoint presentation "touted [the R-5 device] as being safer than the current model that [the SWAT team was] using." *Id.* at 68. Moreover, Stephens offers no support for his assertion that the police officers "dictated" the "demonstration criteria" for the distraction devices. Appellants' Br. at 25. In sum, Stephens's argument is merely an invitation to reweigh evidence and judge witness credibility in his favor, which we may not do.

## Section 3 – Personal Liability

Stephens also contends that, as a corporate officer, he was not personally liable for Brian's injury.[13] Generally, an officer of a corporation is not personally liable for the torts of the corporation merely because of his office, but an officer is personally liable for the torts in which he has participated or which he has authorized or directed. *Civil Rights Comm'n v. Cnty. Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000). Here, Stephens was LET's president and participated in the demonstration of LET's distraction devices that resulted in Brian's injury. This evidence supports the trial court's finding of personal liability, and therefore we affirm the trial court's judgment against Stephens.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and NAJAM, J., concur.

---

[13] Theohary makes a similar claim. Because we reverse and remand for further proceedings as to him, we need not address it.