## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2020, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cody P. Cogswell
Cogswell & Associates
Fishers, Indiana

ATTORNEY FOR APPELLEE

Dawn E. Wellman
Allen Wellman McNew Harvey LLP
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Coby Jent,
*Appellant-Respondent,*

v.

Jerrilee Cave,
*Appellee-Petitioner.*

August 31, 2020

Court of Appeals Case No.
19A-DR-1411

Appeal from the Madison Circuit Court

The Honorable Kevin M. Eads, Magistrate

Trial Court Cause No.
48C01-1608-DR-471

**Shepard, Senior Judge.**

[1] Four years ago, Jerrilee Cave (formerly known as Jerrilee Jent) petitioned to dissolve her marriage with Coby Jent. After extensive litigation, the trial court issued an order dividing the marital estate. Jent appeals from that order, as well

as from the denial of his motion to correct error and motion for relief from judgment. We affirm.

## Facts and Procedural History

[2] Jent and Cave married in 2006, having dated since 1999. They lived on 104 acres of land near Markleville, Indiana ("the Markleville property"). During the marriage, Cave worked as a veterinarian, while Jent had various jobs and started several businesses, with funding from Cave's veterinary business. One of the businesses, which was unsuccessful, was a hunting preserve in Ohio, for which the parties raised deer and other animals on the Markleville property. Jent and Cave separated on or around July 1, 2016. Cave petitioned for dissolution on August 3, 2016. Jent ultimately moved out of state.

[3] The court held an evidentiary hearing on June 20, 2018 and scheduled additional dates to hear more evidence. On June 21, 2018, the court issued an order dissolving the parties' marriage and restoring Jerrilee's prior surname, Cave. The court delayed division of the marital estate until after the parties finished presenting evidence.

[4] The court held additional evidentiary hearings on July 11, 2018, and January 9, 2019. On March 12, 2019, it issued an order dividing marital assets and liabilities. We discuss the order in more detail below, but in summary the trial court ordered an unequal distribution of marital assets in favor of Cave. The court also ordered Cave to pay Jent $145,000, on or before March 1, 2020, to achieve "closer parity" despite the unequal distribution. Appellant's App. Vol.

2, p. 248.  The record does not reflect whether Cave paid Jent, but Cave filed for bankruptcy protection after the trial court issued the order dividing marital assets.

Jent filed a combination motion to correct error and motion for relief from judgment, and Cave filed a cross-motion to correct error.  The trial court did not rule on the parties' motions, which were deemed denied.  Jent now appeals.

## Issues

Jent raises the following restated issues:

I.      Whether the trial court erred in dividing the marital estate unequally in favor of Cave;

II.     Whether the court erred in rejecting Jent's claim that Cave destroyed his personal property;

III.    Whether the court wrongly rejected Jent's claim that Cave spoliated evidence;

IV.     Whether the court erred in denying Jent's motion to correct error/motion for relief from judgment; and

V.      Whether the court erred in rejecting Jent's request that Cave pay his attorneys' fees.

# Discussion and Decision

## I. Unequal Division of the Marital Estate

Jent claims the trial court erred in granting Cave a larger share of the marital estate. When a court divides marital assets and liabilities, "[t]he court shall presume that an equal division of the marital property is just and reasonable." Ind. Code § 31-15-7-5 (1997). The court may determine that the presumption has been rebutted if a party presents evidence concerning the following factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

> (2) The extent to which the property was acquired by each spouse:

> (A) before the marriage; or

> (B) through inheritance or gift.

> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

> (5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.* In dividing marital property, the court must consider these factors but is not required to explicitly address all of them in every case. *Rose v. Bozeman*, 113 N.E.3d 1232 (Ind. Ct. App. 2018). The court's division of the marital estate "is highly fact-sensitive and is subject to an abuse of discretion standard." *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002). A party challenging the court's decision on appeal must overcome a strong presumption that the court acted correctly in applying the statute. *Wanner v. Hutchcroft*, 888 N.E.2d 260 (Ind. Ct. App. 2008).

[8] Here, the trial court noted that the "various factors" set forth in Indiana Code section 31-15-7-5 may rebut the presumption of an equal division of marital assets. Appellant's App. Vol. 2, p. 245. The court ultimately determined an unequal division in favor of Cave was justified because: (1) Cave acquired much of the marital assets, including the Markleville property, prior to the parties' marriage; and (2) Cave maintained the deer at the Markleville property at her own expense throughout the pendency of the divorce action. Cave's net share of the marital estate, including the Markleville property (subject to a mortgage), the deer from the failed hunting preserve venture, and several vehicles, totaled $352,410. Jent's net share of the marital estate, including the $145,000 payment the court ordered Cave to pay Jent, totaled $175,722.

[9] There is ample evidence in the record to support the trial court's division of assets. Cave received the house at the Markleville property during a prior divorce. She purchased the surrounding acreage after she and Jent had begun their relationship and were living together but before their marriage. The mortgage on the Markleville Property was in Cave's name alone, and she alone made all mortgage payments before the marriage, during the marriage, and after the parties separated. Similarly, Cave purchased vehicles with her own funds before and during the marriage, and in the case of one vehicle, made monthly payments in her own name after she and Jent wed.

[10] Jent argues the trial court erred because he and Cave were in a relationship when she acquired the Markleville property and the vehicles, and he contributed to the care of the deer and other animals for the hunting preserve as part of their business venture. This argument is a request to reweigh the evidence. After the parties separated and Jent moved out of the Markleville property, he did not offer to pay the mortgage, and he did not offer to pay for caring for the deer herd and other animals. In addition, Jent was to have maintained the property, and it was dilapidated when he left. The house needed serious repairs, and the stalls in a livestock barn were destroyed because he left six to ten inches of manure in each stall. The trial court properly relied upon the statutory elements set forth in Indiana Code section 31-15-7-5 while dividing the marital estate. *See Cowden v. Cowden*, 661 N.E.2d 894 (Ind. Ct. App. 1996) (affirming trial court's unequal division of marital assets in favor of

husband; trial court considered all the statutory factors, and husband brought considerable assets to the marriage).

[11] Jent next argues that the unequal division of assets is so extreme as to amount to unjust enrichment to Cave and suggests that the trial court should have imposed a constructive trust for his benefit. "A constructive trust is a creature of equity, devised to do justice by making equitable remedies available against one who through fraud or other wrongful means acquires property of another." *Leever v. Leever*, 919 N.E.2d 118, 122 (Ind. Ct. App. 2009). The remedy is available where there is standard fraud or a breach of duty arising out of a confidential or fiduciary relationship. *Id.*

[12] Jent raises three allegations of wrongful conduct by Cave: (1) Cave received a "windfall" by receiving the deer herd, Appellant's Br. p. 28; (2) Cave failed to pay the mortgage on the Markleville property, resulting in the mortgagor filing a foreclosure action while the dissolution case was pending; and (3) Cave filed for bankruptcy protection after the trial court issued the order dividing the marital estate to avoid paying Jent $145,000 as ordered by the court.

[13] There is no evidence of fraudulent or other wrongful misconduct by Cave as to the marital estate. Cave testified that she was in dire financial straits after the failure of the hunting preserve business and that she was attempting to negotiate a resolution with the mortgagor. Further, she paid the expenses for the deer herd by herself for several years. By contrast, Jent admitted that he did not

attempt to make any mortgage payments after learning of the foreclosure case, and he did not contribute to the maintenance of the deer herd.

[14] Finally, there is no evidence that Cave filed for bankruptcy solely to deprive Jent of the court-ordered payment. To be sure, the $145,000 payment is the largest part of Jent's share of the estate, but in the absence of any evidence of wrongful behavior, Jent's remedy lies in the bankruptcy case (in which Cave listed him as a creditor), or in further trial court proceedings. The court did not abuse its discretion.

## II. Alleged Destruction of Personal Property

[15] Jent next argues the trial court erred in rejecting his claim that Cave had damaged or discarded his personal property. He claims that the court should have ordered Cave to pay damages.

[16] The court issued findings and conclusions on its own motion. When a court issues such findings, we apply a two-tiered standard of review. *Granzow v. Granzow*, 855 N.E.2d 680 (Ind. Ct. App. 2006). We first determine whether the record supports the findings and, second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, that is when the judgment is unsupported by the findings and conclusions. *Bizik v. Bizik*, 753 N.E.2d 762 (Ind. Ct. App. 2001), *trans. denied*. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences, and we will not reweigh the evidence or assess witness credibility. *Granzow*, 855 N.E.2d at 684.

Any issue not covered by the findings is reviewed under a general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence. *Steele-Giri v. Steele*, 51 N.E.3d 119 (Ind. 2016).

[17] In this case, Cave testified during the June 20, 2018 hearing that any personal property Jent had left at the Markleville property had been put into a trailer, and the trailer had been sitting on the property for "[a]bout a year" waiting for Jent to retrieve it. Tr. Vol. 2, p. 46. On July 10, 2018, Jent and his father retrieved the trailer. The trailer's tires were flat, and the trailer was sunken into the ground. When Jent's father opened the trailer, it appeared that items had been thrown inside haphazardly.

[18] During the July 11, 2018 hearing, Jent conceded that he had not had an opportunity to take an inventory of the trailer, and many of the items he saw inside were from the body shop business he had run on the Markleville property. He further conceded he had no evidence that Jent had kept any other items that belonged to him. In a later court filing, Jent claimed that after looking through the trailer, he discovered that almost none of his requested personal property was present. Some of his clothes were inside, but they had been sprinkled with glitter. During the January 9, 2019 hearing, Jent asked the trial court to award him at least "a couple of thousand bucks" for the loss of his property. Tr. Vol. 2, p. 51. In his motion to correct error, Jent claimed the value of the destroyed or missing property is approximately "$45,000." Appellant's Br. p. 34.

[19] The trial court did not clearly err in rejecting Jent's claims. Jent did not provide an item-by-item valuation of the missing/damaged property. Further, he received some property in the trailer, including auto parts, that may have offset the other missing property. Most importantly, he did not provide any evidence that Cave was responsible for the missing property.

## III. Alleged Spoliation of Evidence

[20] Jent claims that Cave deleted Facebook posts that depicted her burning Jent's personal property. He further says the trial court should have determined that Cave destroyed evidence and inferred that the evidence was unfavorable to her. Finally, he says the court should have imposed sanctions on Cave.[1] Intentional spoliation of evidence may be used to establish an inference that the spoliated evidence was unfavorable to the party responsible. *Gribben v. Wal-Mart Stores*, 824 N.E.2d 349 (Ind. 2005). A trial court may impose sanctions, including "payment of reasonable expenses," upon a party that destroys evidence. *Id.* at 351. We vest trial courts with wide discretion in dealing with discovery matters and will reverse a trial court's decision regarding discovery only for abuse of discretion. *N. Ind. Pub. Serv. Co. v. Aqua Envtl. Container Corp.*, 102 N.E.3d 290 (Ind. Ct. App. 2018).

---

[1] Jent also argues Cave violated a restraining order regarding social media posts. In fact, the trial court explicitly declined to bar the parties from posting information about the divorce on social media. Instead, the court "strongly discouraged" the parties from posting material that could be detrimental to the dissolution case. Appellant's App. Vol. 2, p. 25.

Here, Cave does not dispute that she deleted unspecified Facebook posts. But Jent did not submit any evidence indicating what the posts may have depicted. His counsel asserted at trial that the posts may have shown Cave burning Jent's property, but conjecture by counsel is not evidence. The parties' breakup was contentious, and Cave's deleted posts may have simply been pejorative statements about Jent. In the absence of proof that Cave deleted posts that were relevant to the marital estate or Jent's personal property, the trial court did not abuse its discretion in failing to conclude that Cave intentionally destroyed evidence and imposing sanctions.

## IV. Motion to Correct Error/Motion for Relief from Judgment

Jent claims the trial court erred in denying his motion to correct errors/motion for relief from judgment because the court erroneously allocated to him property that was not part of the marital estate and failed to address Cave's allegedly perjured testimony.[2]

Indiana Trial Rule 59 authorizes litigants to file a motion to correct error within thirty days of the issuance of a final judgment. A party may raise a variety of claims by motion to correct error, including newly discovered material evidence. *Id.* A trial court has broad discretion in ruling on a motion to correct

---

[2] Jent styles his argument on this point as a failure by the trial court to hold a hearing on his motion, but he does not explain why a hearing was necessary. We instead treat his argument as a challenge to the merits of his combined motion.

error, and we will reverse only for an abuse of that discretion. *Walters v. Lima Elevator Co., Inc.*, 84 N.E.3d 1218 (Ind. Ct. App. 2017).

[24] As for the motion for relief from judgment, Jent argued he was entitled to relief under Indiana Trial Rule 60(B)(3), which allows a trial court to set a aside a judgment for "fraud . . . misrepresentation, or other misconduct of an adverse party . . . ." The movant bears the burden of demonstrating that relief is necessary and just. *Oberlander v. Handy*, 913 N.E.2d 734 (Ind. Ct. App. 2009). We review the denial of a motion for relief from judgment for an abuse of discretion. *Id.*

[25] In its order distributing marital assets, the trial court awarded Jent a cabin, valued at $6,000, that was part of the unsuccessful hunting preserve business in Ohio. Jent argues that at the time Cave petitioned to dissolve the marriage, ownership of the cabin had been transferred to someone else, and it was no longer part of the marital pot.

[26] The record does not support Jent's claim. Cave listed the cabin as a marital asset, claiming that it was initially owned by Tusks-N-Tines, LLC, the hunting preserve business that she and Jent had started with another couple in 2014. In January 2016, after Tusks-N-Tines failed, that company sold its assets, including its real estate and the cabin, to "TNT Outfitters of Ohio, LLC," a company organized by Jent and Cave. Appellant's App. Vol. 3, p. 111. Jent claims that a separate business entity subsequently purchased the land. While this claim may be true, the cabin was listed in the January 2016 sale agreement

as "tangible personal property," indicating that it is portable rather than a fixture on the land. *Id.* at 138. Jent has failed to demonstrate that the record shows the cabin was not a marital asset when Cave filed for dissolution of marriage in August 2016.

[27] Next, Jent argues that he presented newly discovered evidence showing that Cave had committed perjury while discussing his guns. Motions to correct error based on newly discovered material evidence are viewed with disfavor. *Scales v. Scales*, 891 N.E.2d 1116 (Ind. Ct. App. 2008). During the evidentiary hearings, Cave testified that Jent had removed all of his guns from the Markleville property, and that she did not have any of them. In his motion to correct error, Jent attached a photograph Cave had posted on a social media site on February 14, 2019. The photograph depicted a room in her house, including a case containing several guns that Jent claims had belonged to him. Jent further argues the photograph proves Cave lied under oath when she said she had returned Jent's guns to him. The trial court was not obligated to credit his statements about the guns over Cave's statement that she had returned his guns to him. Jent has failed to establish an abuse of discretion as to either the motion to correct error or the motion for relief from judgment.

## V. Attorneys' Fees

[28] Jent argues the trial court should have granted his request for attorneys' fees, in the amount of $40,000. In general, litigants pay their own attorneys' fees. Indiana Code section 31-15-10-1 (1997) authorizes a trial court to order a party to pay another party's litigation costs, including attorneys' fees, in dissolution of

marriage cases. A trial court has broad discretion in deciding whether to award fees. *Eads v. Eads*, 114 N.E.3d 868 (Ind. Ct. App. 2018).

[29] Jent and Cave each asked the trial court to order the other side to pay their attorneys' fees. The court did not address these requests in the dissolution order, effectively leaving each party responsible for its own fees. There is sufficient evidence to support the court's determination. Although Cave's earnings potential was superior to Jent's during their marriage, her veterinary business lost money for several years prior to the filing of this case because she used the profits to help fund the unsuccessful hunting preserve business. Further, Cave's business began to turn a profit after filing the dissolution action, but she also had to pay the mortgage and property taxes on the Markleville property and pay for maintaining the deer herd, without any contributions from Cave. Cave testified that he was in dire financial straits and had borrowed money from family to pay his attorneys, but he had also obtained a job earning $70,000 per year. Both sides spent a lot of money on attorneys' fees in this long-running dispute. We conclude the trial court did not abuse its discretion by rejecting Jent's request for attorneys' fees.

# Conclusion

[30] For the reasons stated above, we affirm the judgment of the trial court.

[31] Affirmed.

Kirsch, J., and Crone, J., concur.